## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | |
|---|---|
| In re JODY R. DEUTSCHER and KELLY C. DEUTSCHER, **Debtors.** | Bankruptcy No. 08-B-73603 Adversary No. Chapter 7 Judge Manuel Barbosa |

### MEMORANDUM OPINION

This matter comes before the Court on the U.S. Trustee's motion to dismiss pursuant to 11 U.S.C. § 707(a) and § 707(b)(1) and (3).  For the reasons set forth herein, the Court GRANTS the U.S. Trustee's motion to dismiss.

### JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### FACTS AND BACKGROUND

The following facts and procedural history are taken from the U.S. Trustee's motion to dismiss, the Debtors' objection to motion to dismiss, and from the testimony and evidence presented and admitted at the evidentiary hearing held on September 9, 2009.

The Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code with the Court on November 6, 2008.  According to the Debtors' schedules, they have $336,752 in

secured debt, $2,220 in unsecured priority debt, and $61,817 in unsecured non-priority debt. The

Debtors have admitted that their obligations are primarily consumer debts. Over half of their secured

debt, or $177,782, is from a loan used to purchase a 42-foot Silverton yacht, purchased by the

Debtors in September 2007. Another $11,000 is from the purchase in August 2008 of a 2006 15-foot

Sea Doo Sportsliner boat, and $30,000 is from the purchase of a 2008 MKZ Lincoln SUV in June

2008. According to the current values listed in the Debtors' schedules, the two boat loans are

oversecured, with the Silverton yacht's value listed at $180,000, and the Sea Doo listed at $11,000.

The loan balance on the Lincoln SUV is $35,970, and therefore, based on the listed value of $30,000,

would be undersecured by $5,970.[1] The Lincoln SUV is not the Debtors' only car, as they also have

a 2003 Ford F150 and a 1998 Mercury Mystique.  The Debtors have no dependents. The Debtors

do not need the boats for work. Mrs. Deutscher is a home health advisor and Mr. Deutscher owns

a painting business. The Debtors have indicated that they plan to reaffirm their debts on all of their

secured vehicles, including the Lincoln SUV and the two boats. The monthly payments are $614

for the Lincoln, $1,503 for the Silverton yacht and $169 for the Sea Doo, or $2,286 in total for the

Lincoln and the two boats.

According to Schedule I of the Debtors' petition, Mrs. Deutscher currently earns $3,690 per

month from her job, and Mr. Deutscher currently earns $1,597 in monthly unemployment

compensation. According to the Debtors' statement of financial affairs, the Debtors jointly earned

---

[1]At the evidentiary hearing, the Debtors presented guidebook value estimates that
indicated that the Silverton yacht might only have a current sale value of $100,570, and the
Lincoln SUV might only have a current sale value of $18,000. However, it seems that these
estimates might be low, since they might not reflect all of the options included in the vehicles or
represent their condition, which appears to be better than that listed in the guidebook entries.

$68,416 in 2007. Although the Debtors' income is above the median for an Illinois household of two, there is no presumption of abuse under 11 U.S.C. §§ 707(a) and 707(b)(2) (the "means test"), largely because of the large secured debt payments. On their Schedule J, the Debtors listed their total monthly expenditures as $5,069.42, meaning that nearly half of their expenditures are attributable to the two boats and the Lincoln SUV. The Chapter 7 Trustee for the case filed a no-asset report on December 16, 2008.

## DISCUSSION

11 U.S.C. § 707(b)(1) gives the Court the power, after notice and a hearing, upon a motion by the U.S. Trustee, to dismiss a case filed by an individual debtor under Chapter 7 whose debts are primarily consumer debts if the Court finds "that the granting of relief would be an abuse of the provisions of [Chapter 7]." Although Section 707(b)(2) sets out a means test, which, if failed, creates a presumption of abuse, Section 707(b)(2) only creates a presumption, and is not the only way that abuse may be proved. Section 707(b)(3) states that:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider--
> (A) whether the debtor filed the petition in bad faith; or
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3) (2009). As the Seventh Circuit Court of Appeals has stated, failing the means test "simply means that the debtor's petition is not presumed abusive . . . the UST can still request dismissal . . . under section 707(b)(3), either for bad faith or based on the totality of circumstances

(which can take into consideration a debtor's actual income and expenses)." Ross-Tousey v. Neary (In re Ross-Tousey), 549 F.3d 1148, 1161-62 (7th Cir. Dec. 17, 2008). Under the totality of the circumstances test, "a debtor's ability to pay may be the most relevant factor, but the Court must also consider: (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay; (3) whether the debtor's proposed family budget is excessive or unreasonable; and (4) whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition." In re Cutler, 2009 WL 2044378, at *3 (Bankr. S.D. Ind. July 9, 2009) (citing In re Green, 934 F.2d 568, 572 (4th Cir.1991)). The focus of the means test under Section 707(b)(2) is on whether debtors have sufficient income to repay a substantial portion of their debt, see, e.g., Eugene R. Wedoff, Judicial Discretion to Find Abuse Under Section 707(b)(3), 71 Mo. L. Rev. 1035, 1036 (2006). Because this is also a factor under the totality of circumstances test, courts have struggled to define the intersection between Sections 707(b)(2) and (3). Some courts have expressed concern that a court might simply use Section 707(b)(3) to substitute its own test for the means test. See, e.g., In re Norckerts, 357 B.R. 497, 506 (Bankr. E.D. Wisc. 2006) ("To apply the means test, dislike the result, and then examine the debtor's ability to fund a chapter 13 plan under § 707(b)(3), renders the means test 'surplusage.'"). When addressing ability to pay under section 707(b)(3), a court must therefore be attentive to the policy choices made by Congress in drafting the means test, including the fact that it gave preferred treatment to secured creditors by allowing scheduled payments of secured debt to be listed as deductions without limitation. See, e.g., In re Le Roy, 2009 WL 357923, at *3 (Bankr. E.D. Wisc.

Feb. 12, 2009) ("[T]he U.S. Trustee sought to reclassify the debtors' secured debt payments as income available to pay creditors. The court determined that the Code expressly permits the deduction of secured debt payments under the Means Test, thereby providing an advantage to secured creditors over unsecured creditors. To ignore the Code's mandate and disallow secured debt expenses allowed by the Means Test would violate Congressional policy."). Thus, a court should not dismiss a case for abuse under Section 707(b)(3) solely because a debtor has a high amount of secured debt or solely because a debtor intends to reaffirm secured debt. However, this fact, when combined with other elements from the Green test, or when combined with evidence that the Debtor was attempting to manipulate the means test, could still demonstrate abuse. Norckerts, 357 B.R. at 507-508. Therefore, while a desire to reaffirm secured debt is not in itself abuse, a court can find abuse under the totality of circumstances when there is "evidence that the Debtor has manipulated the means test, purchased luxuries on credit on the eve of bankruptcy, altered his expenses in his Schedules, accrued significant debt prior to the petition, or that his budget is excessive or unreasonable." Le Roy, 2009 WL 357923, at *4. Determination of whether a purchase is "on the eve of bankruptcy" or abusive, is a case-by-case determination, and, for example, the more expensive the purchase, the longer the time-frame before petition that it might still be seen as being on the eve of bankruptcy. See, e.g., In re Jensen, 407 B.R. 378, 386-87 (Bankr. C.D. Cal. Apr. 28, 2009). Also, purchases "that cause the debtor to become insolvent generally give rise to a determination of abuse, regardless of the length of time that elapses between the purchase and the bankruptcy filing." Id.

The Debtors purchased the Sea Doo boat three months before filing their petition, the Lincoln SUV five months before petition, and the Silverton yacht 14 months before petition. These were

very large purchases for the Debtors, and the payments required for the Silverton yacht alone took

up nearly a third of the Debtors' scheduled average monthly income. Still, the length of time was

probably too long to count as "on the eve of bankruptcy." However, the fact that they were purchased

at a time when the Debtors were likely insolvent, or at least on a rapid slide towards bankruptcy, and

at a time Mr. Deutscher was unemployed indicates that they were "consumer purchases far in excess

of [the Debtors'] ability to pay," which is one of the factors under the Green test.  If the Debtors

could not afford the purchases at the time, there is also question as to whether they can afford to

reaffirm the debt now.  In the Debtors' schedules, the Debtors list an average monthly net income

of negative $525, which is negative largely because of these three secured debts. This seems to

demonstrate another factor under the Green test, an "excessive or unreasonable" proposed family

budget.  In this way, and by the fact that the vehicles can be characterized as luxury items, the

purchases seem to demonstrate a pattern of living beyond the Debtors' means.  This lifestyle also

seems to have been one of the main factors contributing to their financial difficulties.  The Debtors

have admitted that their financial situation was not caused by a 'sudden illness, calamity or

disability.'  Although much of the cause might have been the economic downturn and its impact on

Mr. Deutscher's painting business, these large purchases, which took place during a period Mr.

Deutscher claims to have been unemployed, clearly exacerbated the situation.  Instead of learning

from their mistakes, the Debtors appear to want to continue this lifestyle even after seeking a

bankruptcy discharge by reaffirming their debt on these luxury items rather than follow the

expectation that "when seeking bankruptcy relief, debtors may be expected to do some belt

tightening, including, where necessary, foregoing the reaffirmation of those secured debts which are

not reasonably necessary for the maintenance and support of the debtor and his family." In re Harter,

397 B.R. 860, 864 (Bankr. N.D. Ohio Nov. 5, 2008).

There also appears to be some question as to whether "the debtor's schedules and statement

of current income and expenses reasonably and accurately reflect the true financial condition," which

is another factor under the Green test supporting a finding of abuse.  Mr. Deutscher has at some

times estimated that he might receive substantial income from his painting business, while at other

times he has omitted this income or claimed to be "unemployed."  On the bankruptcy schedules, Mr.

Deutscher only listed his unemployment benefits.  Since these figures are used to apply the means

test, it would be advantageous to the Debtor to list a low income.   In contrast, in the Debtors'

application for the Sea Doo loan, three months before the petition date, the application listed Mr.

Deutscher's employer as his painting business, and listed his salary per month as $4,333.  Similarly,

in the application for the Lincoln SUV loan in May 2008, Mr. Deutscher listed his painting business

as his employer and listed his salary per month as $4,333.  In fact, it appears that Mr. Deutscher did

receive some income from the painting business in 2008, which he failed to list in the schedules.

Mr. Deutscher's painting business had three paint jobs in 2008 prior to the bankruptcy petition, and

the Debtors' 2008 tax returns listed $7,868 in income received from the business in 2008.  While the

Court recognizes that income from a business can be more unpredictable than a set salary, especially

in an economic downturn, these differing estimations of income put the income listed in the Debtors'

schedules into doubt.  The fact that the Debtors' schedules list a negative net income when including

the secured debt payments, and yet the Debtors still express a desire to reaffirm those secured debts,

also puts into doubt the accuracy of the Debtors' estimates.  Finally, it appears that, at the time of

the petition, Mr. Deutscher's painting business had signed contracts for a $79,000 and a $123,500

painting job, even though their bankruptcy schedules gave no indication of the potential income from

these contracts.  The Debtors claim that these projects had been repeatedly put off, and that it was

unclear if they would ever begin, and yet the $123,500 job apparently began in January 2009, just

a couple months after the bankruptcy petition.  These facts seem to indicate that the income listed

in the schedules and used in the means test might have been underestimated. Or, even if they were

accurate at the time, the Debtors might now have a higher income than was reflected in the

schedules, which further supports a finding of abuse under the totality of circumstances.


## CONCLUSION

For the foregoing reasons, the Court will grant the U.S. Trustee's motion to dismiss under

Section 707(b)(1) and (3).

THEREFORE, IT IS ORDERED that

the foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ.

P. 52(a) and Fed. R. Bankr. P. 7052.  A separate order shall be entered pursuant to Fed. R. Bankr.

P. 9021 giving effect to the determinations reached herein.


DATE: October 28, 2009

The Honorable Manuel Barbosa
United States Bankruptcy Judge